BROWN, Appellee,

v.

SPECTRUM NETWORKS, INC., et al., Appellants.

[Cite as *Brown v. Spectrum Networks, Inc.*, 180 Ohio App.3d 99, 2008-Ohio-6687.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070821.

Decided Dec. 19, 2008.

James R. Greene III and Associates, James R. Greene III, and Valerie L. Colbert, for appellee.

Keating Muething & Klekamp, P.L.L., William A. Posey, and Trenton B. Douthett, for appellants.

---

HILDEBRANDT, Judge.

{¶ 1} Bringing forth a single assignment of error, defendants-appellants Spectrum Networks, Inc. ("SNI"), a telecommunications provider, and Troy McCracken, the president and chief executive officer of SNI, appeal the trial court's judgment that disqualified their trial counsel, Gregory Utter, from representing them in further proceedings related to plaintiff-appellee Gary Lee Brown's lawsuit against them.[1] Because we conclude that the trial court failed to hold a proper evidentiary hearing to adequately determine whether Utter's testimony was necessary to the litigation and whether the disqualification of Utter would work a substantial hardship on SNI and McCracken, we reverse the trial court's judgment.

{¶ 2} In November 2001, Brown, an employee and officer of SNI, entered into a Stock Purchase Agreement with SNI and McCracken, agreeing to sell his shares of SNI stock to McCracken. Contemporaneously, Brown entered into a Share Escrow Agreement with McCracken for the transfer of the stock, which named Utter as the escrow agent. Utter and his partner, D. Brock Denton, represented SNI and McCracken in the execution of both agreements.

{¶ 3} In March 2006, Brown sued McCracken and SNI, alleging in a verified complaint, inter alia, that Utter, as the escrow agent, had fraudulently conveyed

---

1. An order disqualifying civil trial counsel is a final order that is immediately appealable pursuant to R.C. 2505.02. See *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 688 N.E.2d 258.

escrow funds to SNI over objections made by Brown's former trial counsel. Specifically, Brown alleged that Utter knew that Brown had objected to the release of the escrow funds. (Brown alleged that he had objected because SNI had denied him his contracted right to obtain access to SNI's federal income-tax records.) SNI and McCracken counterclaimed for fraud, breach of contract, and embezzlement.

{¶ 4} In July 2006, Brown moved to disqualify Utter as counsel for SNI and McCracken because Brown planned to call Utter as a material witness in the trial. The parties all agree that the trial court held a hearing on this motion. A transcript of that hearing is not in the record, but it appears, based on the record before us, that the trial court overruled Brown's motion to disqualify Utter, but indicated that it would reconsider its decision after Brown had deposed Utter so it could determine what testimony Utter would be providing and whether that testimony would be prejudicial to SNI or McCracken. It is undisputed that Brown never deposed Utter.

{¶ 5} Ultimately the case was set for trial on March 26, 2007. Shortly before this date, Brown served a subpoena on Utter to compel his testimony at trial. Due to the hospitalization of Brown's counsel, the trial was rescheduled for October 30, 2007. Again, shortly before the new trial date, Brown served Utter with a subpoena. In response, SNI and McCracken filed a motion in limine to keep Brown from calling Utter to testify based on the fact that the trial court had previously overruled Brown's motion to disqualify. The trial court held a nonevidentiary hearing on the issue of disqualification on October 27, 2007, at which oral arguments were presented. We note that Brown marked six exhibits for the hearing, but the record does not reflect that the trial court properly admitted them into evidence.

{¶ 6} At the hearing, Brown argued that Utter's testimony was necessary to prevail on Brown's claim of fraudulent conveyance. Brown argued that Utter had improperly released the escrow funds despite knowing that Brown's former counsel had objected to the release of those funds and, thus, that Utter had breached his fiduciary duties to Brown. Brown referred to written correspondence between Utter and Brown's former counsel, as well as written correspondence between Denton and Brown's former counsel, to support this claim. But Utter argued that he was not a necessary witness in the lawsuit because his written correspondence spoke for itself, and because Denton, his law partner, could testify as to the circumstances surrounding the release of the escrow funds and the formation of both agreements at issue. Furthermore, Utter argued that, under the escrow agreement, he, as the escrow agent, only had "administrative duties" and thus did not have any fiduciary duty to Brown.

{¶ 7} During the hearing, the trial court stated that even though there were other witnesses to the circumstances surrounding the execution of both agreements and the release of the escrow funds, "maybe [Utter is] the only one that can testify to the issue because [Utter] was directly involved in setting this up." At the conclusion of the hearing, the trial court found that Utter was "involved in this case, very heavily involved in this case," and therefore that he "may have testimony" that would be prejudicial to his client.

{¶ 8} A week after the hearing, the trial court issued an order denying SNI's motion in limine and ordering Utter to "withdraw from representation as trial counsel in this action for [SNI] as he may be called as a witness."

{¶ 9} On appeal, SNI and McCracken argue, in their single assignment of error, that (1) the trial court erred in failing to hold the required hearing before disqualifying trial counsel; (2) the trial court abused its discretion in ordering Utter to withdraw as counsel; and (3) the trial court erred by denying SNI's motion in limine.

{¶ 10} In reviewing a trial court's decision to disqualify a party's counsel, we apply an abuse-of-discretion standard.[2]  An abuse of discretion implies that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable.[3]

{¶ 11} It is well accepted that disqualification of an attorney is a drastic measure that should not be taken unless absolutely necessary.[4]  Therefore it is important for a trial court to follow the proper procedure in determining whether disqualification is necessary.[5]

{¶ 12} On August 1, 2006, the Ohio Supreme Court adopted the American Bar Association Model Rules of Professional Conduct, which, effective February 1, 2007, replaced the Code of Professional Responsibility.  Under Prof.Cond.R. 3.7(a)(3), "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless * * * the disqualification of the lawyer would work substantial hardship on the client."  The official comments to the rule state in part that "(a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party.  Whether

---

2.  *155 N. High Ltd. v. Cincinnati Ins. Co.* (1995), 72 Ohio St.3d 423, 426, 650 N.E.2d 869.

3.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

4.  *A.B.B. Sanitec W., Inc. v. Weinsten*, 8th Dist. No. 88258, 2007-Ohio-2116, 2007 WL 1290076, at ¶ 18.

5.  *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 6, 688 N.E.2d 258, citing *Freeman v. Chicago Musical Instrument Co.* (C.A.7, 1982), 689 F.2d 715, 721.

the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client."

{¶ 13} Prof.Cond.R. 3.7 ("Rule 3.7") replaced the former disciplinary rules DR 5–101(B) and DR 5–102(A) and (B), under the former Code of Professional Responsibility. Prior case law discussing the duty of an attorney representing a client where that attorney will or is likely to serve as a witness at trial is based upon these prior disciplinary rules. Under the prior rules, the Ohio Supreme Court set forth the procedure for the trial court to follow in deciding whether a lawyer can serve as both an advocate and a witness.[6] The court first had to determine the admissibility of the attorney's testimony. If the testimony was found to be admissible, the court then had to consider whether any exceptions to the disciplinary rules were applicable.[7] If none applied, the attorney was disqualified from representing his client. The burden of proving that disqualification was necessary rested upon the moving party,[8] and the burden of proving that one of the exceptions applied was on the attorney seeking to claim the exception.[9] Because Rule 3.7 is similar to the former disciplinary rules, all of these stated principles are pertinent to an analysis of the application of the new rule.

{¶ 14} Under Rule 3.7, a lawyer may be disqualified from representing his client only when it is likely that the lawyer will be a "necessary" witness. We cannot find any Ohio appellate court that has specifically addressed the necessity requirement of Rule 3.7. However, the American Bar Association, in drafting Rule 3.7, has indicated that the necessity requirement is met when it is demonstrated that "the proposed testimony is relevant, material, and unobtainable elsewhere."[10] Accordingly, if the lawyer's testimony would be duplicative or is obtainable from other sources, the lawyer should not be disqualified.[11] Therefore, we hold that to meet the necessity requirement under Rule 3.7, the party calling

---

6. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379.

7. Id. at paragraph two of the syllabus.

8. *Waliszewski v. Caravona Builders, Inc.* (1998), 127 Ohio App.3d 429, 713 N.E.2d 65.

9. *155 N. High Ltd.*, 72 Ohio St.3d 423, 650 N.E.2d 869, at syllabus.

10. See ABA Annotated Model Rules of Professional Conduct (5th Ed.2003) 384 (commentary).

11. Id. at 385.

the opposing counsel to testify must demonstrate that the opposing counsel's testimony is relevant and material to the determination of the issues being litigated and unobtainable elsewhere.[12] This holding follows prior case law dealing with disqualification under the former Code of Professional Responsibility. Under the former code, the "necessity" of disqualifying an attorney was "determined by consideration of factors such as the significance of the matters, the weight of the testimony, and the availability of other evidence." [13]

{¶ 15} Accordingly, the proper procedure for a trial court to follow in determining whether to disqualify an attorney who has been called to testify by the opposing party is for the court to (1) determine whether the attorney's testimony is admissible and (2) determine whether the attorney's testimony is necessary. Under the second part of this analysis, the court must decide whether the attorney's testimony is relevant and material to the issues being litigated and whether the testimony is unobtainable elsewhere. If the court determines that the lawyer's testimony is admissible and necessary, the court must then determine whether any of the exceptions set forth under Rule 3.7 apply.

{¶ 16} A review of the record in this case shows that the trial court did not follow the proper procedure prior to disqualifying Utter as counsel for SNI and McCracken. First, there was no determination made by the court as to whether Utter's testimony would be admissible. Further, there is a lack of evidence in the record from which the trial court could have adequately determined the admissibility of Utter's testimony. Second, there was no determination made that Utter's testimony was necessary. While we could probably imply, from the trial court's finding that "maybe [Utter is] the only one that can testify to the issue because [Utter] was directly involved in setting this up," that the court had determined that Utter's testimony was relevant and material to the issues being litigated, the court still failed to determine whether Utter's testimony was unobtainable elsewhere. Even if anything in the record can be construed as a finding that the substance of Utter's testimony was unobtainable elsewhere, the record is devoid of evidence upon which such a determination could have been made. There was no evidence presented as to what Utter's testimony would be. Third, the trial court did not determine whether SNI or McCracken would suffer

---

12. See *Security Gen. Life Ins. Co. v. Superior Court* (1986), 149 Ariz. 332, 335, 718 P.2d 985 (state supreme court recognized a two-part test for necessity under that state's similarly worded Rule 3.7, requiring that the lawyer's testimony be relevant and material and unobtainable elsewhere).

13. *Montgomery v. Mann,* 10th Dist. No. 06AP–724, 2007-Ohio-44, 2007 WL 53520, at ¶ 10, citing *United States v. Poulsen* (2006), S.D.Ohio Case No. CR2–06–129, 2006 WL 2619852

substantial hardship if Utter was disqualified. Again, if anything in the record could be construed as a finding that SNI would not suffer a substantial hardship by having Utter disqualified, there is a lack of evidence in the record supporting such a determination. We note that SNI was not given the opportunity to present any evidence on this issue, as an evidentiary hearing was not held.

{¶ 17} Because there was no evidentiary basis upon which a proper disqualification of counsel could have been granted, and because the trial court failed to follow the required procedure for determining whether disqualification was necessary, the trial court abused its discretion when it disqualified Utter from further proceedings in this case. Accordingly, the judgment of the trial court is reversed, and the case is remanded with instructions for the trial court to reinstate counsel pending a proper disqualification determination.[14]

{¶ 18} On remand, the trial court must determine the admissibility of Utter's testimony and, if the testimony is admissible, determine whether Utter's testimony is necessary. If Utter's testimony is relevant, material, and unobtainable elsewhere, the trial court must determine whether disqualifying Utter would create a substantial hardship for SNI and McCracken. To make these determinations, it is incumbent upon the parties to submit sufficient evidence for the court to make a proper decision. Accordingly, an evidentiary hearing is necessary in considering whether a lawyer should be disqualified from representing his client under Rule 3.7.[15] This evidentiary hearing can be an oral hearing, where evidence is properly submitted to and admitted by the court, or through a paper hearing, so long as there is sufficient evidence before the court—such as depositions, affidavits, or written stipulations as to what counsel's testimony would be—that the court may properly consider in making its findings.[16]

{¶ 19} We emphasize that, by remanding, we are not implying that disqualification is not warranted, but are merely holding that, to disqualify counsel, the court must undertake the required analysis.

{¶ 20} Because we have concluded that the trial court erred by disqualifying Utter without following the proper procedure, we hold that the trial court also abused its discretion in overruling the motion in limine. Therefore, we sustain the single assignment of error of SNI and McCracken. The judgment of the trial

---

**14.** See *Environmental Network Corp. v. TNT Rubbish Disposal, Inc.* (2001), 141 Ohio App.3d 377, 751 N.E.2d 502.

**15.** See *Hall v. Tucker,* 169 Ohio App.3d 520, 2006-Ohio-5895, 863 N.E.2d 1064.

**16.** Id. at ¶ 23.

court is reversed, and this cause is remanded for further proceedings in accordance with this decision and the law.

Judgment reversed
and cause remanded.

SUNDERMANN, P.J., and DINKELACKER, J., concur.